UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPHY W. HAMMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:07-cv-1573-WTL-JMS |
| ) | |
| STEPHEN H. STRIEBEL and JUDITH ) | |
| STRIEBEL, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ENTRY ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is the Plaintiff's Motion for Partial Summary Judgment (Docket No. 64). The motion is fully briefed, and the Court being duly advised, now **DENIES** the Plaintiff's motion for the reasons set forth below.

**I. SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007);

*see also* Fed. R. Civ. P. 56(e)(2).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Methodist Med. Ctr. of Ill. v. Am. Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Wolf v. Northwestern Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001), *cert. denied*, 534 U.S. 1028 (2001). "[T]he court is not required to scour the record in search of evidence to defeat a motion for summary judgment."  *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

In evaluating a motion for summary judgment, although the court draws all reasonable inferences from undisputed facts in favor of the nonmoving party and views the disputed evidence in the light most favorable to the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute; "instead, the nonmoving party must present definitely, competent evidence in rebuttal."  *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).  "If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'"  *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986)).

## II.  BACKGROUND

Stephen Striebel ("Stephen") was the president of FDL, Inc. ("FDL").  Beginning in 1994, Stephen was also FDL's sole shareholder.  FDL was initially quite successful, however, the business has declined in recent years.  Ultimately, on March 24, 2006, FDL filed for Chapter 11 bankruptcy.  On that date, FDL showed a negative net worth of approximately $28 million.  During the Chapter 11 proceedings, FDL sold essentially all of its assets to R&S Acquisition, LLC.  When it became clear that there would be no reorganization, the case was converted to a Chapter 7 proceeding on July 19, 2006.  Joseph Hammes ("Trustee"), was appointed trustee for the Chapter 7 estate on July 20, 2006.

## III.  DISCUSSION

After the Chapter 7 conversion, the Trustee filed this suit against Stephen and his wife Judith Striebel ("Judith").  Several of the Trustee's claims seek to avoid and recover payments that FDL made to Stephen.  The Trustee alleges that at least some of these payments were either made when FDL was insolvent or rendered FDL insolvent.

Section 544(b) of the Bankruptcy Code permits the Trustee to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim."   This section gives the Trustee the power to take advantage of both state and federal fraudulent conveyance law.  *See Matter of Xonics Photochemical, Inc.*, 841 F.2d 198, 202 (7th Cir. 1988).

Indiana has adopted the Uniform Fraudulent Transfers Act ("UFTA") which is substantially similar to the Bankruptcy Code.  Indiana recognizes two types of fraudulent

conveyances – those that are actually fraudulent and those that are constructively fraudulent. IND. CODE 32-18-2-14 to -15.  In the instant case, the Trustee proceeds under the constructive fraud rubric.  According to Indiana's version of the UFTA, as well as § 548 of the Bankruptcy Code,

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if: (1) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and (2) the debtor: (A) was insolvent at that time; or (B) became insolvent as a result of the transfer or obligation.

IND. CODE 32-18-2-15; *see also* 11 U.S.C. § 548(a)(1)(B) (defining a fraudulent transfer as one "made or incurred on or within 2 years before the date of the filing of the [bankruptcy] petition, if the debtor . . . received less than a reasonably equivalent value in exchange for such transfer . . . and [the debtor] was insolvent on the date that such transfer was made . . . , or became insolvent as a result of such transfer").

The only meaningful difference between Indiana's UFTA and the Bankruptcy Code is that Indiana allows the Trustee to challenge transfers made up to four years prior to the filing of the petition.  IND. CODE 32-18-2-19.  The Bankruptcy Code only allows the Trustee to challenge transfers made two years before the petition was filed.  *See* 11 U.S.C. § 548.  Regardless of this difference, under either law, in order to succeed on his motion for partial summary judgment, the Trustee must prove that: (1) the transfer involved FDL's property; (2) the transfer was made for less than reasonably equivalent value; and (3) FDL was insolvent, made insolvent by the transaction, operating or about to operate without sufficient capital, or unable to pay its debts as they became due.

In the instant case there is no dispute about the first element – the money transferred to

Stephen was FDL's property. Thus, the Court turns to the second and third elements, which the parties vigorously dispute.

"To prevail in a fraudulent conveyance action under § 548, the Trustee must prove that the debtor received less than reasonably equivalent value." *Barber Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997) (citing *In re Bundles*, 856 F.2d 815, 916-17 (7th Cir. 1988). "The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received." *Id.* (citing *Matter of Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1234-35 (7th Cir. 1990)). "The burden of proving lack of reasonably equivalent value under § 548 rests on the Trustee." *Id.* (citing *In re Rodriguez*, 895 F.2d 725, 726 (11th Cir. 1990)). The Seventh Circuit has explained that "the formula for determining reasonably equivalent value is not a fixed mathematical formula; rather, the standard for '[r]easonable equivalence should depend on all the facts of each case,' an important element of which is fair market value." *Id.* (quoting *Bundles*, 856 F.2d at 824).

With respect to this second factor, the Trustee claims that "the payments [to Stephen] were not in return for some contemporaneous value, but were simply distributions to [Stephen] as owner." Docket No. 65 at 8. Stephen challenges this conclusion and argues that the Trustee's "perfunctory analysis overlooks the value of the services provided to FDL by its President. [The Trustee] also overlooks the atypical manner in which Stephen was compensated by FDL." Docket No. 73 at 18. Indeed, as Stephen testified, many of the payments from FDL were "for services," Docket No. 64 Ex. 14 at 16. Stephen also explained that he received checks "[f]or working and bringing FDL to the position they were making money." *Id*. at 15-16. Finally,

5

Stephen states that "this stuff" – the checks that he received from FDL – "was considered the salary." *Id*. at 16. Considering all of the parties' admissible evidence in the light most favorable to the non-moving Defendants, the Court believes that there is an unresolved issue of material fact regarding whether FDL received reasonably equivalent value from Stephen in exchange for the distributions. Thus, summary judgment is inappropriate.

In addition, there is also an unresolved issue of material fact as to the third, solvency, element. The Trustee claims that "FDL was insolvent when [Stephen] caused the $14 million to be paid to him." Docket No. 65 at 7. According to the Trustee's expert, "FDL was insolvent by $793,000 as of December 31, 2002, and . . . the insolvency worsened during the years [Stephen] received the $14 million in distributions, with liability exceeding assets by $13.583 million at December 31, 2003 and by $23.785 million as of December 31, 2004." *Id.* at 7-8. Although the Defendants advance several arguments in opposition to the Trustee's conclusion, the most convincing one, and the only one that the Court will address, relates to FDL's 2003 federal tax return. *See* Docket No. 73 Ex. 3. In this document, FDL reports approximately $930,000 of income. Thus, according to Stephen, FDL was not insolvent as of December 31, 2003. Of course, the Trustee takes issue with this document, but as this is the Trustee's motion for partial summary judgment, all of the Defendants' facts must be believed and all reasonable inferences must be drawn in the Defendants' favor. Accordingly, because there is an unresolved issue of material fact regarding the date of insolvency, the Trustee's motion is denied.

Finally, the Trustee seeks partial summary judgment against Judith because some of the funds transferred to Stephen were allegedly used to pay the couple's joint tax liabilities, which benefitted Judith. *See* Docket No. 65 at 8. The Bankruptcy Code does allow a trustee to recover

the property transferred, or the value of the property from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). But to recover from Judith, the Trustee must first prove that the transfers from FDL to Stephen may properly be avoided. *See id.* ("to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title . . . ."). Because there are unresolved issues of material fact precluding summary judgment against Stephen, the Trustee has not satisfied § 550(a) and summary judgment is also inappropriate against Judith.

## **CONCLUSION**

For the foregoing reasons the Plaintiff's Motion for Partial Summary Judgment (Docket No. 64) is **DENIED**.

SO ORDERED: 06/16/2010

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Bruce D. Brattain
Brattain & Minnix
batmi5@aol.com

John M. Rogers
Rubin & Levin PC
johnr@rubin-levin.net